**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANIEL LE,

      Plaintiff,

vs.                                       Case No. 1-25-cv-00591 LF/JFR

BOARD OF EDUCATION FOR
ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant.

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant Board of Education for Albuquerque Public Schools ("APS"), by and through its counsel of record, Modrall, Sperling, Roehl, Harris & Sisk, P.A. (Mia K. Lardy, Tessa L. Chrisman, and Emily J. Windsor) moves for summary judgment on Plaintiff's claims against it pursuant to Rule 56 of the Federal Rules of Civil Procedure. As demonstrated herein, each of Plaintiff's three claims against APS fails as a matter of law because the underlying allegations are time-barred, precluded by Plaintiff's failure to exhaust his administrative remedies, insufficiently pled within the Complaint, and/or incapable of satisfying the required elements for Plaintiff's claims under Title VII or the New Mexico Whistleblower Protection Act.

## BACKGROUND

Plaintiff has raised three claims against APS which purportedly arise from events occurring during Plaintiff's employment with APS. *See* Complaint [Doc. 1]. Two of Plaintiff's claims allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e17 (as amended). *Id.* (Count I alleges sex- and race-based discrimination under Title VII; Count II alleges retaliation under Title VII). Plaintiff's final claim alleges violations of the New Mexico Whistleblower Protection Act ("NMWPA"), NMSA 1978 §§ 10-16C-1 *et seq. Id.* (Count III). As demonstrated

herein, Plaintiff cannot establish any of these claims as a matter of law. First, many of the alleged bases underlying Plaintiff's Title VII claims are time-barred and are otherwise deficient due to Plaintiff's failure to properly exhaust his administrative remedies on those grounds. Second, Plaintiff cannot establish prima facie claims of discrimination or retaliation on the grounds stated within Plaintiff's underlying EEOC Charge. Third, Plaintiff cannot satisfy the prima facie elements of his NMWPA claim on any of the bases he has alleged. Accordingly, APS is entitled to summary judgment on Plaintiff's claims against it pursuant to Rule 56 and respectfully requests that the Court enter an Order of Judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMFs")[1]

1. Plaintiff is currently employed by APS as a school counselor. *See* Deposition of Plaintiff, relevant portions attached hereto as **Exhibit A**, at 21:19-24.

2. From 2015 until August 2023, Plaintiff was a school counselor at Chaparral Elementary School. Plaintiff's Dep., Ex. A, at 32:13-18 (testifying that he was a counselor at Chaparral Elementary prior to working at Sandia High School); *see also* August 8, 2023 Letter of Reprimand, attached as **Exhibit B** (transferring Plaintiff to Sandia High School).

3. On May 3, 2022, APS's Equal Opportunity Services ("EOS") Office received a complaint alleging that Plaintiff sexually harassed a fifth-grade student. *See* October 21, 2022 Letter, attached as **Exhibit C**.[2]

4. APS placed Plaintiff on administrative leave with pay pending completion of EOS's investigation. *See* May 3, 2022 Letter, attached as **Exhibit D**.

---

[1] Consistent with Fed. R. Civ. P. 56, APS admits these facts for purposes of this Motion only.

[2] APS is redacting the names of the Complainant parent and the name of the student within Exhibit C to preserve confidentiality. A copy of this document has been marked confidential and produced to Plaintiff without redactions, consistent with the Court's Confidentiality and Protective Order [Doc. 22]. If the Court would like to examine the exhibit without redactions, undersigned counsel can provide a copy to the Court for *in camera* review.

5.      On October 21, 2022, the EOS office sent a letter to Plaintiff to inform him that the investigation was complete and resulted in a finding that Plaintiff had sexually harassed the complainant. Ex. C, at 2.

6.      Plaintiff appealed EOS's decision on October 31, 2022. *See* November 23, 2022 Letter, attached as **Exhibit E**.

7.      The APS Appeal Panel convened to hear Plaintiff's appeal on November 22, 2022, and upheld EOS's decision that Plaintiff had sexually harassed the complainant. Ex. E.

8.      APS's Human Resources department set a due process hearing for January 11, 2023 to consider disciplinary action based on the  misconduct underlying EOS's finding. *See* December 8, 2022 Letter, attached as **Exhibit F**; *see also* Ex. B, at 1.

9.      Plaintiff remained on paid administrative leave from May 3, 2022 until July 31, 2023. *See* August 4, 2023 memorandum, attached as **Exhibit G**.

10.     Based on the due process hearing held in January 11, 2023, Plaintiff was reassigned to be a school counselor at Sandia High School, effective August 2, 2023, and was also placed on a 90-day performance improvement plan ("PIP") beginning August 8, 2023. Ex. B at 1, 5.

11.     Plaintiff claims that he submitted a "Formal Whistleblower Complaint" concerning APS's alleged conduct to the EEOC on or about November 28, 2023. *See* Plaintiff's Dep., Ex. A, at 129:07-130:05.

12.     Plaintiff never provided a copy of this "Formal Whistleblower Complaint" to APS. *Id.*

13.     Plaintiff did not identify or refer to the "Formal Whistleblower Complaint" as a protected statement or disclosure under the NMWPA within his verified discovery responses in this case, relevant portions of which are attached as **Exhibit H**.

3

14.    Additionally, none of the Bates ranges cited within Plaintiff's responses show that the "Formal Whistleblower Complaint," was ever submitted by Plaintiff to EEOC or the Office of Civil Rights. *See* Ex. H.

15.    Plaintiff agreed that the "Formal Whistleblower Complaint" was not released until April 26 or 27, 2025. *See* Plaintiff's Dep., Ex. A, at 131:10-13. The coversheet for this complaint is attached as **Exhibit I**; *see also* Document Produced by Plaintiff as PLA000745, attached as **Exhibit J** ("A Formal Whistleblower Report, issued in April 2025….").

16.    On January 19, 2024, Plaintiff was placed on paid administrative leave. *See* January 19, 2024 Letter, attached as **Exhibit K**.

17.    Within his Complaint, Plaintiff alleges that APS engaged in specific acts of discrimination and/or retaliation, *see* [Doc. 1], ¶¶ 56-57, on or around the following dates:

   a.  November 6, 2020, *id.*, ¶ 38;

   b.  "[L]ate January 2022," *id.*, ¶ 45;

   c.  April 2022, *id.*, ¶ 47; and

   d.  August 2023, *id.*, ¶¶ 51, 54 (alleging placement on Performance Improvement Plan ("PIP") and reassignment to different school was discriminatory); *see also* Ex. B at 5 (placing Plaintiff on PIP and reassigning Plaintiff from Chaparral Elementary School to Sandia High School);

   e.  September 2023, *id.*, ¶ 48 (alleging that a faculty member was "undermin[ing] Plaintiff's credibility with the student body by indicating that it was inappropriate for Plaintiff, a male, to speak with female students.").

18.    Comparatively, within Plaintiff's EEOC Charge, submitted January 19, 2024, a copy of which is attached as **Exhibit L**, he alleges that APS engaged in the following discriminatory or retaliatory actions against him:

4

a. Denying Plaintiff access to his email on November 17, 2023;

b. Removing Plaintiff's ability to print from the school printer on January 10, 2024; and

c. Placing Plaintiff on administrative leave on January 19, 2024.

19. Plaintiff's EEOC Charge expressly claims that the earliest act of alleged discrimination and/or retaliation occurred on November 16, 2023, and that the latest or most recent act of alleged discrimination occurred on January 19, 2024. Ex. L (listing "11/16/2023" as the "Earliest" instance and "01/19/24" as the "Latest" instance under "Date(s) Discrimination Took Place").

20. Plaintiff amended his EEOC twice after January 19, 2024 – once on April 4, 2024, a copy of which attached as **Exhibit M**, and again on April 9, 2024, a copy of which is attached as **Exhibit N**.

21. In his Second Amended EEOC Charge, Plaintiff added an allegation stating that he had to participate in a mandatory performance review on August 14, 2023, but did not amend the dates of discrimination included in his Charge from stating that the earliest act of alleged discrimination occurred on November 16, 2023. *See* Ex. N.

22. Plaintiff signed his initial EEOC charge and the subsequent amendments under the heading "I declare under penalty of perjury that the above is true and correct." *See* Exs. L, M, N; *see also* Plaintiff's Dep., Ex. A, at 107:10-13.

23. Plaintiff testified that when he tried to access his email account from an APS chrome book on November 17, 2023, that he received an error message indicating he needed to sign in but could not access his settings. Plaintiff's Dep., Ex. A, at 88:09-89:21.

24. Plaintiff testified that in November 2023, APS restored his email access on the same day he reported it or the day after. Plaintiff's Dep., Ex. A, at 88:09-89:21.

25.     Plaintiff testified that even when he experienced issues printing from the school printer from January 20 to January 22, 2024 he was able to print the materials needed through help from his colleagues. Plaintiff's Dep., Ex. A, at 110:09-20.

26.     Plaintiff testified that he was only unable to print for nine days in total and that APS IT ultimately fixed the issue. Plaintiff's Dep., Ex. A, at 108:02-109:17.

27.     Plaintiff testified that he is aware that any APS employee can be placed on paid administrative leave at any time. Plaintiff's Dep., Ex. A, at 115:13-15.

28.     Plaintiff testified that he submitted a complaint to the New Mexico Attorney General on November 16, 2023, complaining of alleged conduct by the school principal in 2021 and 2022, but confirmed that he never submitted a copy of this Complaint to APS. Plaintiff's Dep., Ex. A, at 93:10-21.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the non-moving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotations and citations omitted). Once this burden is satisfied, the non-moving party must identify specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ARGUMENT

I.      **APS is Entitled to Summary Judgment on Plaintiff's Title VII Claims (Counts I and II) as a Matter of Law.**

Plaintiff's Title VII claims alleging discrimination (Count I) and retaliation (Count II) fail as a matter of law on several grounds. Indeed, the allegations in Plaintiff's Complaint cannot

ground a Title VII claim because Plaintiff failed to timely and/or fully exhaust his administrative remedies with respect to these allegations. Other allegations, which Plaintiff raised within his EEOC Charge but did not raise within his Complaint, cannot ground a Title VII claim because of Plaintiff's failure to properly plead them consistent with the Federal Rules of Civil Procedure and because these allegations are otherwise incapable of setting forth a prima facie case for discrimination or retaliation. Accordingly, as demonstrated below, there is no genuine issue of material fact which requires trial on the merit for Plaintiff's Count I or II claims under Title VII, and APS is, thus, entitled to summary judgment on these claims.

      a.   **<u>Any Allegations Pre-Dating March 25, 2023 are Time-Barred and Otherwise Fail as a Matter of Law Because Plaintiff Did Not Exhaust His Administrative Remedies For Any Such Allegations.</u>**

It is well-settled that to raise a viable claim under Title VII, a plaintiff must first exhaust his administrative remedies under the procedure outlined in Section 2000e-5. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, (2002) ("Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit.") (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). A prerequisite to the exhaustion of administrative remedies under Title VII is a timely filed written charge of discrimination. 42 U.S.C. § 2000e-5(e) and (f)(1) (1994); 29 U.S.C. § 626(d). Title VII requires that charges for discrimination must be filed within three-hundred days from the alleged discriminatory act consistent with state or local anti-discrimination laws. *See* 42 U.S.C. § 2000e-5(e)(1); NMSA 1978 § 28-1-10(A) (requiring discrimination or retaliation actions brought pursuant to the New Mexico Human Rights Act, NMSA 1978 §§ 28-1-1 *et seq.* be filed "within three hundred days after the alleged act was committed."). A claim not filed within this statutory limit is time barred. *Morgan*, 536 U.S. at 109.

In this case, Plaintiff filed his EEOC Charge on January 19, 2024. *See* UMF 18; Ex. L. Three-hundred days prior to January 19, 2024 is March 25, 2023. As such, Plaintiff did not timely file an EEOC Charge for any allegations preceding March 25, 2023, and any claims predicated on such allegations are, thus, time-barred. *Morgan*, 536 U.S. at 109. Notably, Plaintiff's Complaint raises multiple allegations predating March 25, 2023. UMF 17(a)-(c). Plaintiff's failure to timely file any EEOC charge based on APS's alleged conduct between November 6, 2020 and April 2022 precludes him from basing his present claims for relief under Title VII on this alleged conduct. Consequently, to the extent Plaintiff's claims are based on alleged conduct occurring prior to March 25, 2023, including alleged conduct occurring from November 6, 2020 to April 2022, the claims are time-barred and fail as a matter of law.

Additionally, beyond timely filing an EEOC charge, in order to properly exhaust administrative remedies under Title VII, a party must (i) set forth the facts and nature of the charge within the charge; and (ii) receive notice of the right to sue. *See* 42 U.S.C. §§ 2000e–5(b)–(c), (e), (f)(1). "This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)). Moreover, it is well-established within the Tenth Circuit that "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Morgan*, 536 U.S. at 110–13); *see also Lincoln*, 900 F.3d at 1181. As such, in order to exhaust his administrative remedies, Plaintiff needed to list each concrete discriminatory or retaliatory act that he alleged against APS within his EEOC Charge. Plaintiff did not do so here for any alleged conduct occurring before March 25, 2023.

As an initial matter, Plaintiff's EEOC Charge does not allege that any discriminatory or retaliatory acts occurred prior to November 16, 2023. *See* UMFs 19-21. Instead, Plaintiff's EEOC Charge is express that the earliest date of alleged discrimination was November 16, 2023. *Id.* Plaintiff never amended the allegations or the time period within either of his amended charges of discrimination; instead, he simply identified additional protected class characteristics as the purported bases of alleged discriminatory acts occurring between November 16, 2023, and January 19, 2024 and added a factual allegation that he had to participate in a performance review in August 2023. UMF 20-22; Exs. M, N. Moreover, unlike Plaintiff's Complaint, Plaintiff's EEOC Charge does not contain any allegations of conduct occurring on November 6, 2020, in late January 2022, or in April 2022. UMFs 17-22; Exs. L, M, N. Thus, Plaintiff failed to provide the facts or nature of any of these alleged discriminatory or retaliatory actions within his EEOC charge, depriving APS of notice and the opportunity to respond to these allegations during the administrative process and depriving EEOC of the ability to conciliate those claims. Consequently, Plaintiff did not receive a right to sue with respect to these allegations and cannot recover under Title VII on those grounds.

In sum, Plaintiff failed to comply with the requirements of Section 2000e-5 for any allegations pre-dating March 25, 2023 and, consequently, cannot support any Title VII claim as a matter of law. Summary judgment in APS's favor is, thus, warranted on Counts I and II to the extent these claims are based on allegations pre-dating March 25, 2023.

    b.  **Plaintiff Cannot Establish a Title VII Claim Based on the His Allegations of Discriminatory or Retaliatory Conduct in August or September 2023 Due to Plaintiff's Failure to Exhaust Administrative Remedies.**

Within his Complaint, Plaintiff has alleged that APS engaged in discriminatory conduct in August 2023 by placing him on a performance improvement plan ("PIP") and by reassigning him to work as a school counselor a different school within the District. UMF 17(d). Plaintiff also

9

alleges that an APS employee engaged in discriminatory conduct in September 2023 by "indicating" in some unspecified manner that it was inappropriate for a male teacher to speak with female students. UMF 17(e). Critically, Plaintiff's EEOC Charge does not make any allegations concerning a PIP,[3] reassignment to a different school, or any comment or actions by an APS employee suggesting that it was improper for Plaintiff to speak with female students. UMFs 18, 20-22. Additionally, Plaintiff's EEOC Charge, as discussed in Section I(a) above, is express that the earliest incident of discrimination and/or retaliation it complains of occurred in November 2023. UMFs 18-22. As such, Plaintiff did not exhaust his administrative remedies for the discrete and particular alleged acts of discrimination or retaliation he now claims occurred in August and September 2023. *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 110–13, 122 S.Ct. 2061); *see also Lincoln*, 900 F.3d at 1181.

Notably, Plaintiff cannot correct this deficiency, as he cannot now timely file an EEOC Charge with respect to his August or September 2023 allegations. Indeed, in order to timely raise allegations based on acts occurring on August 8, 2023, *see* UMFs 10, 17(d), given the three-hundred-day rule, Plaintiff would have needed to file an EEOC Charge identifying those alleged acts no later than June 3, 2024. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff did not do so. Additionally,

---

[3] Assuming *arguendo* that Plaintiff's reference to required participation in a performance review within his Second Amended EEOC Charge, *see* Ex. N, constitutes exhaustion of his administrative remedies for APS placing Plaintiff on a PIP on August 8, 2023, which APS denies as the Charge is express that the earliest discrimination occurred in November 2023, and because Plaintiff's Second Amended EEOC Charge does not even allege that the PIP was improperly created or enforced, any Title VII claim on this basis fails as a matter of law. UMFs 10, 18-22. It is well-established that an employer defendant can defend against a Title VII claim by demonstrating that there is a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803, 93 S. Ct. 1817, 1824 (1973). Here, the available evidence demonstrates that APS received a complaint alleging that Plaintiff sexually harassed a fifth-grade student based on questions he asked during his work as a school counselor at Chaparral Elementary. UMFs 2-3. Consequently, APS undertook an investigation into the allegations, placing Plaintiff on paid administrative leave for the duration of the investigation, and ultimately concluded that Plaintiff had sexually harassed the complainant and violated APS policies. UMFs 4-9. APS held a due process hearing for Plaintiff and decided to place Plaintiff on a PIP to address the underlying behavior. UMFs 9-10. Accordingly, APS's actions were legitimate, and nondiscriminatory, as they were taken to address Plaintiff's behavior, which was inconsistent with APS policies and procedures and made a fifth-grade student feel uncomfortable and sexually harassed. As such, Plaintiff cannot succeed on a Title VII claim based on his August 8, 2023 PIP, or any corresponding performance reviews, as a matter of law.

in order to timely raise allegations based on conduct occurring in September 2023, *see* UMF 17(e), Plaintiff would have needed to file an EEOC Charge identifying that alleged act by July 26, 2024, at the latest. Again, Plaintiff did not do so. As such, he cannot recover under Title VII for conduct which allegedly occurred in August or September 2023 as a matter of law.

### c. Plaintiff Has Not Established and Cannot Establish a Title VII Claim Based on the His EEOC Allegations of Discriminatory or Retaliatory Conduct Occurring On or After November 16, 2023 as a Matter of Law.

Plaintiff's Complaint does not make any allegations dated after September 2023, but his underlying EEOC Charge does identify three alleged instances of discriminatory and/or retaliatory conduct by APS on or after November 16, 2023. UMFs 17-18. As demonstrated below, Plaintiff cannot succeed on any Title VII claim based on these allegations because they are not properly pled within his Complaint as required and, further, cannot satisfy all prima facie elements for a discrimination or retaliation claim under Title VII.

### i. Plaintiff Did Not Properly Plead Title VII Claims Based on Any Alleged Conduct Occurring on or After November 16, 2023.

As an initial matter, Plaintiff has failed to properly plead any factual allegations occurring on or after November 16, 2023, and, as such, cannot recover for any such allegations. Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It is well-established that to satisfy this standard, a federal complaint "must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)) (emphasis removed). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

11

Unlike his EEOC Charge, Plaintiff's Complaint does not contain any specific factual allegations occurring after September 2023 and is devoid of any allegations that APS discriminated or retaliated against Plaintiff by denying him email or printing access or by placing him on leave in January 2024. *See* UMFs 17-18; *see also* Complaint [Doc. 1]. As such, Plaintiff's Title VII claims do not rest on any allegations occurring on or after November 16, 2023, even though these are the very factual allegations he raised before the EEOC and were, thus, known to him at the time of filing his Complaint. *Robbins*, 519 F.3d at 1248 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). Accordingly, Plaintiff has failed to comply with pleading standards to allege that APS violated Title VII based on any of the factual allegations raised in Plaintiff's EEOC Charge. Moreover, Plaintiff's time to amend his Complaint under the Order Adopting the Joint Status Report with Changes and Setting Case Management Deadlines [Doc. 13] has long passed. *See* Order (setting Plaintiff's deadline to amend as September 15, 2025). Accordingly, as a matter of law, Plaintiff Title VII claims are properly dismissed to the extent they are predicated on allegations occurring after November 16, 2023, as the Complaint raises no such allegations.

### ii. *Plaintiff Cannot Establish a Prima Facie Case of Discrimination or Retaliation Based on Any Alleged Conduct Occurring On or After November 16, 2023.*

To state a prima facie case of discrimination under Title VII, a plaintiff is required to show intentional discrimination through either direct or indirect evidence. *Vasquez v. Tierra Del Sol Housing Corp.*, No. Civ. 13-777 LH/SMV, 2015 WL 13665469, at *6 (Mar. 25, 2015). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Direct evidence requires proof of an existing policy which itself constitutes discrimination, or oral or written statements on the part of a defendant showing a discriminatory

12

motivation." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854-55 (10th Cir. 2007) (internal quotation marks and citations omitted). Without direct evidence of discrimination, a plaintiff must prove their claims utilizing the burden-shifting framework set forth in the *McDonnell Douglas* case. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008). Under *McDonnell Douglas*, to set forth a prima facie case of discrimination, a plaintiff must establish that (1) they are a member of a protected class, (2) they suffered an adverse employment action, (3) they are qualified for the position at issue, and (4) they were treated less favorably than others not in the protected class. 411 U.S., at 792-793; *see also Hunt,* 951 F. Supp. 2d, at 1153. Similarly, to state a prima facie case of retaliation under Title VII, under Title VII, a plaintiff must show that (1) he engaged in protected activity, (2) he was subject to adverse employment action subsequent to, or contemporaneous with, the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action. *Guevara v. Best Western Stevens Inn, Inc.,* 78 Fed. Appx. 703, 704 (10th Cir. 2003).

Here, Plaintiff cannot establish a prima facie case of either discrimination or retaliation under Title VII based on any of the alleged conduct raised in his EEOC Charge because (1) he cannot establish that any adverse employment action was taken against him as a matter of law and (2) he cannot establish that APS's alleged conduct was retaliatory because he cannot show that it was taken based on Plaintiff's participation in any protected activity.

First, APS takes each of the three instances of alleged discriminatory or retaliatory conduct from Plaintiff's EEOC Charge in turn to demonstrate that none of the alleged conduct can support a finding that Plaintiff suffered an adverse employment action, a required element for discrimination and retaliation claims under Title VII. To constitute an adverse employment action, the employer's action "must alter the employee's compensation, terms, conditions, or privileges of employment, or adversely affect his status as an employee." *Tyree v. Dep't of Transp., New*

13

*Mexico*, 468 F.Supp.2d 1351, 1362-1363 (D.N.M. 2006). "Examples of actions that effect a significant change in employment status include hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 1363. Plaintiff alleged the following conduct in his EEOC Charge, none of which constitutes an adverse employment action under this definition:

- Plaintiff's EEOC Charge first alleges that he was denied access to email. UMF 18(a). Plaintiff has since testified in this case that this issue was remedied by APS on the same day he reported it or the day after. UMF 24. Temporary loss of email access through one specific computer due to a technical issue or error message for a maximum of one business day did not alter the terms of Plaintiff's employment or constitute a significant change in employment status. As such, it is not an adverse employment action capable of grounding a Title VII claim.

- Plaintiff's EEOC Charge next alleges that he lost the ability to print from the school printer in January 2024. UMF 18(b). Plaintiff has since testified that he was always able to print materials needed through help from his colleagues and that this issue was ultimately resolved by APS IT, resulting in only nine days where he had to rely on colleagues to help him print. UMFs 25-26. Again, a technical issue precluding Plaintiff from printing directly through the school printer in January 2024 for the sum total of nine days did not constitute a significant change in his employment status. Additionally, Plaintiff always had access to materials printed through the school printer as his colleagues printed materials for him on request. As such, Plaintiff cannot establish that his brief printing issue constitutes an adverse employment action under Title VII.

- Finally, Plaintiff's EEOC Charge alleges that Plaintiff was placed on administrative leave on January 19, 2024. UMF 18(c). This leave was paid. UMF 16. Plaintiff agrees that any APS employee can be placed on paid administrative leave at any time. UMF 27. Placing an employee on paid administrative leave does not constitute an adverse employment action under Title VII. *See e.g., Gerald v. Locksley,* 785 F. Supp. 2d 1074, 1117 (D.N.M. 2011) ("Nor was placing Gerald on paid administrative leave an adverse employment action."); *Swearnigen–El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 860 (7th Cir.2010) (affirming summary judgment against plaintiff who was, among other things, placed on paid leave, because the plaintiff failed to establish an adverse employment); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (placement on paid administrative leave for three weeks, without other adverse consequences, was not an adverse employment action); *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 773 (5th Cir.2009) ("[P]lacing [the employee] on paid leave—whether administrative or sick—was not an adverse employment action.") (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007) (internal quotation marks omitted)); *Nichols v. S. Ill. Univ.–Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (placement on paid administrative leave for three months was not an adverse employment action); *Eggers v. Moore*, 257 Fed.Appx. 993, 995 (6th Cir.2007) ("[P]aid leave is not an adverse employment action." (citing Peltier v. United States, 388 F.3d 984, 988 (6th Cir.2004).

As such, Plaintiff cannot demonstrate that any of the alleged acts occurring on or after November 16, 2023 constituted or caused adverse employment actions. As such, Plaintiff's claims under Title VII fail as a matter of law because Plaintiff cannot establish this required element.

15

Second, Plaintiff's retaliation claim also fails as a matter of law because Plaintiff cannot establish that any of APS's conduct was retaliatory in nature, as Plaintiff cannot show that APS took action based on Plaintiff's participation in a protected activity. *Guevara,* 78 Fed. Appx. at 704. Under Title VII, a "protected activity" refers to the plaintiff's "protected opposition to discrimination" made illegal under Title VII. *Iweha v. State of Kansas*, 121 F.4th 1208, 1233 (10th Cir. 2024) (quoting *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1233 (10th Cir. 2015)). "To satisfy [the causal connection] element, a 'plaintiff must show that the individual who took adverse action against [him] knew of the employee's protected activity.'" *Id.* (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)). Plaintiff cannot do so here as a matter of law, entitling APS to summary judgment on Plaintiff's Title VII retaliation claim (Count II).

Plaintiff claims to have submitted complaints to the New Mexico Attorney General and to have submitted a "Formal Whistleblower Complaint" to EEOC and/or the Office of Civil Rights ("OCR") in November 2023. UMFs 11, 28. Critically, Plaintiff denies ever having produced either statement to APS. UMFs 12-15, 28. Moreover, the "Formal Whistleblower Complaint," by Plaintiff's own admission, was not released until April 2025 and, as such, falls after each of the alleged discriminatory and/or retaliatory acts alleged within Plaintiff's Complaint and/or EEOC Charge. UMFs 15, 17-18. Consequently, Plaintiff cannot demonstrate that APS was aware of Plaintiff's statements to the New Mexico Attorney General, EEOC, or OCR prior to taking any of the actions alleged in Plaintiff's EEOC Charge. Thus, Plaintiff cannot succeed on his retaliation claim against APS based on any conduct allegedly occurring on or after November 16, 2023, as a matter of law.

16

II.     **APS is Entitled to Summary Judgment on Plaintiff's NMWPA Claim (Count III) as a Matter of Law.**

To establish a prima facie case under the NMWPA, Plaintiff must show: (1) he made a protected disclosure; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. NMSA 1978 § 10–16C–3; *Walton v. New Mexico State Land Office,* 113 F. Supp. 3d 1178, 1199 (D.N.M. 2015). Plaintiff cannot establish these elements in this case. Even assuming *arguendo* that Plaintiff's alleged November complaint to the New Mexico Attorney General, "Formal Whistleblower Complaint," and January 19, 2024 EEOC Complaint constitute "protected disclosures" within the meaning of the NMWPA, Plaintiff's NMWPA claim necessarily fails because he cannot show that he was subjected to an adverse employment action and/or any causal connection between such an action and Plaintiff's protected disclosure. This means that Plaintiff cannot satisfy two of the three required elements under the NMWPA. Accordingly, APS is entitled to summary judgment on Plaintiff's Count III claim.

"Whether something qualifies as an adverse employment action [under the NMWPA] must be determined in reference to an employee's 'terms and conditions of employment'—to the employment relationship that in fact existed between employer and employee." *Velasquez v. Regents of N. New Mexico Coll.*, 2021-NMCA-007, ¶ 63, 484 P.3d 970. As such, determining whether an action constitutes an adverse employment action under the NMWPA is significantly similar to the analysis conducted under Title VII. *See Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1297 (10th Cir. 2013) (implying that Title VII retaliation analysis applies to NMWPA). As demonstrated in Section I(c)(ii) *supra*, none of the alleged actions occurring after Plaintiff's purportedly protected disclosures – which supposedly occurred in November 2023 and January

2024 – constitute adverse employment actions, as none of these actions modified the terms and conditions of Plaintiff's employment or altered the benefits he received. UMFs 1, 23-27.

Additionally, Plaintiff cannot show that APS took any action based on a protected disclosure made by Plaintiff for the same reasons demonstrated in Section I(c)(iii) above, including that Plaintiff did not make APS aware of his November 2023 complaint to the New Mexico Attorney General, did not release his "Formal Whistleblower Complaint" until April 2025, and did not file his EEOC Charge until after being placed on administrative leave in January 2024 – the most recent alleged discriminatory and/or retaliatory action taken by APS against him. UMFs 11-22, 28.

Accordingly, Plaintiff's NMWPA claim fails as a matter of law, because Plaintiff cannot establish that he suffered any adverse employment action, let alone that any such action was taken by APS because of Plaintiff's protected disclosure.

## CONCLUSION

Plaintiff cannot establish claims against APS under Title VII or the New Mexico Whistleblower Protection Act as a matter of the law for the reasons set forth herein. Accordingly, APS respectfully requests that the Court enter summary judgment in its favor on each of Plaintiff's claims against it and for any further relief the Court deems just and proper.

Respectfully submitted,

MODRALL, SPERLING, ROEHL,
 HARRIS & SISK, P.A.

 */s/ Tessa L. Chrisman*
Mia K. Lardy
Tessa L. Chrisman
Emily J. Windsor
P. O. Box 2168
Albuquerque, NM 87103-2168
(505) 848-1800
Fax (505) 848-9170
mia.lardy@modrall.com
tessa.chrisman@modrall.com
emily.windsor@modrall.com
*Attorneys for Defendant Albuquerque*
 *Public Schools*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of March, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Counxel Legal Firm**
Andrew N. Morrow
Andrew P. Meier
2222 S. Dobson Rd. Suite 1104
Mesa, AZ 85202
(480) 536-6122
amorrow@counxel.com
ameier@counxel.com
*Attorneys for Plaintiff*

By:  */s/ Tessa L. Chrisman*
        Tessa L. Chrisman

19