**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**DANIEL LE,**

      **Plaintiff,**

**vs.**                                           **Civ. No. 1:25-CV-00591**

**BOARD OF EDUCATION FOR**
**ALBUQUERQUE PUBLIC SCHOOLS,**

      **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel Le "(Le"), by and through counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion for Summary Judgment and requests that the Court deny the Motion in its entirety. Defendant's Motion should be denied because the record, viewed in the light most favorable to Le as the non-moving party, presents genuine disputes of material fact regarding Defendant's discriminatory conduct, Defendant's retaliatory motive, and whether Defendant's decision to place Le on a performance improvement plan and in a different building materially harmed the terms, conditions, and opportunities of his employment. Summary judgment is improper where, as here, the evidence permits a reasonable jury to conclude that Defendant acted for unlawful reasons and its actions negatively affected Le's career path and professional opportunities.

## I.    **INTRODUCTION**

This case concerns a series of employment actions culminating in and surrounding Defendant's discriminatory and retaliatory placement of Le on a performance improvement plan and in a different building under circumstances that hindered his career opportunities. Defendant attempts to characterize its conduct as non-actionable or justified as a matter of law, and cites to

1

procedural technicalities it claims preclude Le's causes of action as a matter of law. Defendant's framing ignores both the governing summary judgment standard and the factual disputes reflected in the record.

Under federal employment discrimination and retaliation principles, summary judgment is inappropriate where a plaintiff offers evidence from which a factfinder could conclude that the employer's stated reasons are disputed, selective, inconsistent, or pretextual. Likewise, a transfer or reassignment may constitute an adverse employment action when it causes a material disadvantage, including diminished professional advancement, reduced prestige, loss of opportunities, or concrete harm to an employee's career trajectory. That is precisely Le's position here. Defendant's actions must be evaluated in context, not as an isolated administrative decision, but as part of discriminatory treatment and retaliation that affected where Le worked, what professional opportunities were available to him, and how his career progressed within Albuquerque Public Schools ("APS"). At a minimum, those issues present classic questions for a jury.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1224 (10th Cir. 2014). In deciding a motion for summary judgment, the Court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Id*. The Court may not weigh credibility, resolve factual conflicts, or choose among competing inferences where the record would permit a reasonable jury to find for the plaintiff. *Plotke v. White*, 405 F.3d 1092, 1094 (10th Cir. 2005).

Where intent, motive, causation, and pretext are disputed, as they commonly are in discrimination and retaliation cases, summary judgment should be granted sparingly. *See id*. at 1102-1103.  If the evidence would allow a reasonable factfinder to conclude that Defendant's explanation is not the true reason for its actions, or that discriminatory or retaliatory animus was a motivating factor, Defendant is not entitled to judgment as a matter of law. *Id*.

## III.    STATEMENT OF MATERIAL FACTS

As required by D.N.M.LR-Civ. 56.1(b), Le sets forth the following material facts cited by Defendant as to which he contends a genuine issue does exist:

1.    Defendant's UMF No. 10 – Le does not dispute that he was reassigned to be a school counselor as Sandia High School, effective August 2, 2023, or that he was placed on a 90-day performance improvement plan ("PIP") beginning August 8, 2023. Exhibit B, 1, 5.  However, he disputes that his reassignment and placement were "based on the due process hearing held on January 11, 2023" as Defendant contends.

Further, as required by D.N.M.LR-Civ. 56.1(b), Le sets forth the following facts that he contends are material to the resolution of Defendant's Motion and Defendant's ultimate liability for the claims he asserts:

A.    Le is a member of a protected class because he is Asian. (Deposition of Plaintiff Daniel Le ["Plaintiff's Dep."], Exhibit 1, p. 5.

B.    Le reported certain conduct by one student against another that he reasonably believed constituted sexual harassment. (Plaintiff's Dep., Exhibit 1, pp. 41-43).

C.    Le reasonably believed such harassment was prohibited by law and Defendant's policies, which required mandated reporting of sexual harassment or other similar behavior or conduct. (Plaintiff's Dep., Exhibit 1, p. 41).

D.      Defendant's employee referred to Le as "Tono Ren Nosaka", after which another one of Defendant's employees said, "Tudor, Tono, Tono Nosaka".  As Le was walking away, Defendant's employee said, "Tono Nosaka" or "Tono, Breathe With Me," which refers to a character from a book who is Asian and fulfills certain sexual fantasies. (Plaintiff's Dep., Exhibit 1, pp. 44-45).

E.      These comments made Le feel very uncomfortable. (Plaintiff's Dep., Exhibit 1, pp. 45, 46-47).

F.      Le was also publicly racialized and sexualized in January 2023, after which Defendant's employees made racial comments about his mother. (Plaintiff's Dep.., Exhibit 1, p. 45).  Defendant's employee imitated Le's mother in a fake Asian accent. (Plaintiff's Dep., Exhibit 1, p. 52).

G.      Some of these statements were made in front of students. (Plaintiff's Dep., Exhibit 1, pp. 45-46).

H.      After Defendant's employees ignored his concerns and he reported them to authorities outside APS, Le learned that his superior, Felicia Mondragon, wanted to terminate him. (Plaintiff's Dep., Exhibit 1, p. 55).

I.      Le's issues with his email and printer were continuations of Defendant's previous actions that led him to believe he was the subject of discrimination and retaliation. (Plaintiff's Dep., Exhibit 1, pp. 90-91).

J.      Le also reported his concerns to Defendant's employee, Vicki Price, in August 2023, to no avail since she told him not to write anything down about his concerns, so he reported the concerns outside of APS because they were not being addressed internally. (Plaintiff's Dep., Exhibit 1, pp. 94-97).

K.      Le also learned in September 2023 that another one of Defendant's employees informed a student that she needed a female counselor, not a male counselor like Le. (Plaintiff's Dep., Exhibit 1, pp. 124-125).  Le reasonably believed the employee's comments violated Title IX because the employee indicated it was not appropriate for a male to counsel female students. (Plaintiff's Dep., Exhibit 1, p. 125).

L.      Le reasonably believed that the employee's comments were discriminatory and retaliatory because of all of the historical events that had occurred up to that point regarding his race and sex. (Plaintiff's Dep., Exhibit 1, pp. 126-127).

M.      Defendant learned about Le's Formal Whistleblower Complaint when it received a copy from the Office of Civil Rights. (Plaintiff's Dep., Exhibit 1, p. 130).

N.      In addition to physical and emotional distress, Le lost certain employment opportunities as a result of the discipline and transfer to another building in August 2023, including the inability to pursue national board certification, the inability to work during summer programs, and the inability to work in a higher-paying position. (Plaintiff's Dep., Exhibit 1, pp. 137-138, pp. 151-156).

O.      Le informed the Equal Employment Opportunity Commission ("EEOC") investigator about his placement on the PIP in August 2023, his transfer to another building in August 2023, his complaint to the New Mexico Attorney General in November 2023, and his placement on paid administrative leave in January 2024. (Exhibit 2, EEOC Inquiry Information, submitted to the EEOC by Plaintiff, PLA000058-PLA000065, at PLA000059).

P.      Le's submission to the EEOC was not limited to just the information claimed by Defendant; it included all of the historical background, Defendants' employee's racial and sexual comments to him and within earshot of students, his reporting to other third parties, and

5

Defendant's actions in August 2023 of placing him on the PIP and transferring him to another building. (Exhibit 2, PLA000060-PLA000061).

IV.    **ARGUMENT AND LAW**

A.    **Defendant overstates its timeliness and exhaustion defenses.**

Defendant argues that any allegation predating March 25, 2023 is categorically barred because Le filed his EEOC charge on January 19, 2024.  Defendant also argues that Le's allegations regarding actions in August and September 2023 should not be considered by the Court. Defendant's framing is too broad.

First, background evidence remains relevant even if some acts are not independently actionable.  Under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), earlier acts may still be considered as background evidence illuminating discriminatory motive, retaliatory animus, pretext, knowledge, and context for later timely actions.  Thus, even if certain earlier events cannot themselves support standalone damages, they may still be used to explain why later actions were discriminatory or retaliatory. *Id*.  Le contends the string of events, commencing in 2020 and continuing up to and past March 2023, provide background and context for his assertion that Defendant engaged in discriminatory and retaliatory conduct in August and September 2023 when it placed him on the PIP and transferred him to another building.  More specifically, Defendant's actions in August and September 2023 are within the 300-day filing period.

Second, the Court must examine the EEOC charge and amendments liberally. *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023).  The ultimate question is whether the conduct alleged in the Complaint would fall within the scope of an EEOC investigation that would reasonably grow out of the charges actually made in the EEOC

charge. *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  Le's EEOC charge, when read together with the April 2024 amendments, was sufficient to place race, sex, retaliation, the August 2023 review and PIP-related events, and the January 2024 leave within the scope of the agency investigation.  In fact, Le included all of these events in his online submission by comprehensively discussing all contextual facts and Defendant's discriminatory and retaliatory conduct in August 2023. (Exhibit 2, PLA000060-PLA000061).   Le submits that the later amendments must be read with the original filing as part of one administrative presentation, particularly where the same actors, same employment setting, and same alleged discriminatory and retaliatory pattern are involved.

Accordingly, the Court should reject Defendant's timeliness and exhaustion defenses because Le's placement on the PIP and his subsequent transition to another building fall within the 300-day timeframe set forth in Title VII.

**B.**     **<u>Genuine disputes of material fact preclude summary judgment on Le's discrimination and retaliation claims</u>.**

To prevail on summary judgment, Defendant must show that no reasonable jury could find that its treatment of Le was motivated by unlawful discrimination or retaliation.  It has not done so, at least not at this stage of the case.  Instead, the record, particularly the events in August and September 2023, supports a reasonable inference that Defendant treated Le adversely because of a protected characteristic and attempted to recast those actions as routine personnel management.

i.     <u>Elements of Discrimination and Retaliation Claims</u>

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Further,  Title VII's anti-retaliation provision

prohibits an employer from "discriminat[ing] against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Thus, under Title VII, it is unlawful for an employer to discriminate because of a protected characteristic and to retaliate against an employee because he opposed unlawful practices or participated in protected proceedings. *See* 42 U.S.C. § 2000e.

To survive summary judgment on a Title VII discrimination or retaliation claim, a plaintiff must directly show that animus played a motivating role in the employer's decision, or reply upon the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first show a prima facie case of discrimination or retaliation. *Bynes v. St. Catherine Hospital*, 158 F.4th 1107, 1113 (10th Cir. 2025).  If a prima facie case is established, the burden then shifts to the employer to show a legitimate, non-discriminatory or non-retaliatory reason for its decision. *Id*. at 1113-1114.  The burden then shifts back to the plaintiff to show there is a genuine dispute of material fact as to whether the employer's proffered reason is pretextual, or unworthy of belief. *Id*. at 1114.

Le contends the facts show a prima facie case of both discrimination and retaliation.  And Defendant's Motion does not eliminate factual disputes on motive, causation, or pretext.  The Court's task is not to decide which side's explanation is more persuasive.  Rather, the Court must determine only whether a genuine dispute of material fact exists.  In this case, a reasonable jury could conclude from the other employees' racial and sexual statements, the timing of Defendant's actions, the circumstances surrounding Le's placement on the PIP and transition to a different building, the decision-making process, the disparate treatment reflected in the record, and the consequences imposed on Le, that Defendant's actions were discriminatory and retaliatory.

8

Moreover, a reasonable jury could also conclude that Defendant's stated reasons for its conduct in August 2023 are incomplete, inconsistent, or pretextual.

ii.    A jury could conclude that Defendant's actions were discriminatory and retaliatory.

The parties do not dispute that Le is a member of a protected class. Defendant cannot dispute that one or more of its employees made sexually and racially charged comments to him or in his presence. Le made his opposition to such conduct well know, both internally and externally. In fact, Le reported this conduct, as well as the sexual harassment he observed by a student, to Vicki Price and other outside third parties. But Defendant placed Le on a PIP and then transitioned him to a different building. Those actions are central to both liability and pretext. A reasonable jury could infer that the August and September 2023 actions were not neutral, but instead reflected discriminatory treatment and retaliatory motive, particularly when considered in light of Le's protected activity and the practical consequences that followed.

The timing of Defendant's conduct is also important. Temporal proximity, while not always sufficient standing alone, is recognized as probative of causation in retaliation cases, especially when combined with evidence of changed treatment, selective decision-making, shifting explanations, or disproportionate consequences. Here, the sequence of events permits a reasonable factfinder to infer that Defendant acted because Le engaged in protected conduct and because Defendant sought to disadvantage him after he did so.

Defendant's Motion should also be denied because Le's placement in a different building qualifies as an actionable adverse employment action on this record. The issue is not limited to salary or title. The relevant question is whether the reassignment materially affected the terms, conditions, or privileges of employment, or otherwise caused a concrete professional disadvantage. In *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), the United States Supreme Court

recently held that a plaintiff in a Title VII case must only show a transfer or change in employment position "brought about some 'disadvantageous' change in an employment term or condition." *Id*. at 354. "To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment." *Id*. In other words, neither termination nor "significant" harm is required. *Id*. Defendant cannot obtain summary judgment merely by labeling Le's discipline and reassignment as lateral or administrative, especially when the student's report about Le's conduct despite being upheld on appeal was not used to terminate Le.

Le's position is that the discipline and reassignment hindered his career opportunities. A reasonable jury could find that placement on a PIP and in a different building reduced Le's access to advancement opportunities, diminished his professional visibility, impaired the trajectory of his work within APS, and deprived him of opportunities that were materially important to his career. A transfer that limits promotion prospects, reduces prestige, narrows responsibilities, or otherwise impairs future advancement is not a mere inconvenience. Instead, *Muldrow* dictates that these changes were "disadvantageous" in a term or condition of Le's employment. *Id*. at 354. Here, Le has identified tangible professional harm, namely that his career opportunities were hindered by the discipline and reassignment to a different school building. This evidence is sufficient to present a jury question.

For retaliation purposes, the standard is broader still: an action is materially adverse if it could dissuade a reasonable worker from engaging in protected activity. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68. Defendant's August and September 2023 conduct, including the challenged placement, readily satisfies that standard when viewed in the light most

10

favorable to Le because, if presented with an undesirable reassignment, a reasonable employee could very well choose not to make or support a charge of discrimination.

### iii.    The record supports a finding of pretext.

Even if Defendant has articulated facially legitimate reasons for its actions, summary judgment remains improper because the record permits a finding of pretext.  Pretext may be shown by weaknesses, implausibility, inconsistencies, contradictions, selective enforcement, suspicious timing, or other evidence that the employer's explanation is unworthy of belief. *See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

Here, a factfinder could conclude that Defendant's explanation for Le's placement on a PIP and transition to a different building does not fully account for the surrounding facts, the other employees' racially and sexually charged statements to and around Le, the impact on Le of those statements and conduct, or the manner in which Defendant treated him as compared with others. If the evidence supports competing interpretations, and it does, the dispute must be resolved by a jury, not on summary judgment.

Le has also presented sufficient evidence to proceed on his retaliation claim. Protected activity, followed by materially adverse treatment and evidence of causal connection, is enough to defeat summary judgment where motive is disputed.  Defendant's actions in August and September 2023, together with the professional harm caused by Le's reassignment, permit a reasonable inference that Defendant acted in retaliation for protected conduct.  Moreover, retaliation claims are particularly ill-suited for resolution on summary judgment when the employer's intent must be inferred from circumstantial evidence.  The Court should therefore deny Defendant's Motion on Le's retaliation claim as well.

11

C.    **Genuine disputes of material fact preclude summary judgment on Le's claim under the NMWPA.**

The New Mexico Whistleblower Protection Act ("NMWPA") is directed at retaliation by public employers against public employees. The key operative provision states that a public employer may not take retaliatory action against a public employee because the employee engaged in one of three categories of protected conduct. N.M.S.A. § 10-16C-3.

First, under subsection (A), protection covers an employee who communicates to the public employer **_or_** to a third party information about an action or failure to act that the employee in good faith believes is an unlawful or improper act. N.M.S.A. § 10-16C-3(A). Second, subsection (B) protects an employee who provides information to, or testifies before, a public body as part of an investigation, hearing, or inquiry into an unlawful or improper act. N.M.S.A. § 10-16C-3(B). Third, subsection (C) protects an employee who objects to, or refuses to participate in, an activity, policy, or practice constituting an unlawful or improper act. N.M.S.A. § 10-16C-3(C).

The statute itself says a communication may be made to a third party, and the New Mexico Supreme Court has confirmed that, to receive protection, the disclosure must confer a public benefit even if the employee also has personal motives. *Lerma v. State*, 2025-NMSC-033, ¶¶ 35-36, 578 P.3d 1111 (N.M. 2025). Further, a plaintiff need not prove the reported conduct actually violated a law so long as the good-faith-belief requirement is met and the matter reported falls within the statute's concept of unlawful or improper conduct. *Vinyard v. N.M. Hum. Servs. Dep't*, No. A-1-CA-36717, 2019 WL 6728859, *3 (N.M. Ct. App. Nov. 12, 2019).

Le's disclosures to third parties falls under subsection (A) because he specifically reported his good faith belief about Defendant's unlawful and improper acts – its employee's refusal to abide by laws and district policies regarding mandated reporting of allegations of sexual harassment by one student against another. Not only did Le report these acts to third parties, he

12

also specifically reported his concerns to Defendant's employee and his superior, Vicki Price. She ignored those concerns, told him not to write any of it down, and he was then subsequently placed on a PIP and transitioned to a new building. Viewed in a light most favorable to Le, an inference at least exists that Defendant's actions were retaliatory in violation of the NMWPA.

For purposes of a claim under the NMWPA, retaliatory action is not confined to discharge; it also includes any discriminatory or adverse employment action in the terms and conditions of public employment. *See Velasquez v. Regents of N. N.M. Coll.*, 2021-NMCA-007, ¶ 63, 484 P.3d 970. "'An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment.'" *Lucero v. City of Albuquerque*, 2022 WL 17335805, at *4 (N.M. Ct. App. Nov. 30, 2022), quoting *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 16, 139 N.M. 193, 131 P.3d 43. "Examples of such a change include 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, [and] a decision causing a significant change in benefits.'" *Id*.

As Le argued above, a reasonable jury could conclude that Defendant engaged in an adverse employment action because he lost certain employment and financial opportunities due to placement on the PIP and the transition to a new building. Le contends the issue of whether Defendant's actions in fact constituted adverse employment action are a jury question because of all the facts and circumstances leading up to these actions. In fact, the Tenth Circuit has held that whether an action is an adverse employment action is a factual question for the jury and that the inquiry is not a question of law for the Court where the evidence creates a genuine dispute of material fact. *Baca v. Sklar*, 398 F.3d 1210, 1219 (10th Cir. 2005), citing *Bass v. Richards*, 308 F.3d 1081, 1088 (10th Cir. 2002).

For example, in *Lerma, supra*, the New Mexico Court of Appeals reversed summary judgment for the public employer on a New Mexico WPA claim.  The employer argued that reassignment to a mailroom was not an adverse employment action because the employee was not demoted, his hourly pay did not change, and his schedule did not change.  The Court rejected that argument, holding that the evidence created a genuine issue of material fact because the reassignment changed duties, restricted movement, and reduced overtime opportunities.  Like *Lerma*,  Le's reassignment changed the trajectory of his career opportunities and potential compensation for additional work.

Accordingly, the Court should deny Defendant's Motion for Summary Judgment on Le's NMWPA claim and allow the jury to decide the facts.

## V.     CONCLUSION

Le respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety.

RESPECTFULLY SUBMITTED on this 27th day of April, 2026.

COUNXEL LEGAL FIRM

*/s/ Andrew N. Morrow Esq.*
**Andrew N. Morrow, Esq. CAID #18/384**
2222 South Dobson Road, Suite 1104
Mesa, Arizona 85202
P: (480) 536-6122
E: amorrow@counxel.com
*Attorney for Plaintiff*

14

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 27, 2026, a copy of the foregoing was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic filing: Mia K. Lardy and Tessa L. Chrisman, Attorneys for Defendant, Modrall, Sperling, Roehl, Harris & Sisk, P.A., P.O. Box 2168, Albuquerque, New Mexico 87103.

*/s/ Stacey King*
Stacey King